## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AUDREY McCARTHY,

     *Plaintiffs*,

v.

MASSACHUSETTS DEPARTMENT OF
CHILDREN AND FAMILIES,

     *Defendant*.

Civil Action No.: _____

**JURY DEMAND**

## <u>COMPLAINT</u>

COMES NOW, Plaintiff Audrey McCarthy, by and through undersigned counsel, and files this action pursuant to Title I of the Americans with Disabilities Act as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA") and the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H-11I ("MCRA") against Defendant Massachusetts Department of Children and Families ("DCF") on the grounds and in the amount set forth as follows:

## <u>NATURE OF THE ACTION</u>

There is perhaps no greater example of the precise scenario for which Congress and the Massachusetts Legislature enacted laws to protect disabled persons from being discriminated against for no reason other than because they have a disability. Yet that is expressly what happened in this action.

Plaintiff is a hard-working woman who dedicated thirty-three (33) years to the Commonwealth of Massachusetts. Plaintiff has always been able to perform the essential functions of her job at or in excess of DCF's reasonable expectations. Throughout her career, she had no derogatory marks on her record. Yet on November 1, 2021, DCF took adverse employment action against her and placed Plaintiff on leave without pay because Plaintiff is disabled and could not

comply with DCF's demand that she become vaccinated against COVID-19—***despite the fact that doing so was substantially likely to kill her***.

As explained in more detail below, Plaintiff from a severe heart condition that impacts both, the strength of her heart valve and the direction in which blood flows through her heart. Her condition is well-documented, and she provided DCF with medical evidence supporting her diagnosis. Plaintiff's treating physician also provided documentation to DCF that advised Plaintiff's disability was contra-indicated and the risks of receiving the vaccine were overwhelmingly outweighed by any potential benefit the vaccine may have conferred. Nevertheless, DCF prioritized its affinity for being able to hold itself out a 100% vaccinated workforce over *literally*, Plaintiff's life. DCF knew Plaintiff was disabled, DCF knew accommodations were permitted under Executive Order 595, DCF knew it would not suffer any undue hardship, and DCF knew it was <u>required</u> to accommodate Plaintiff under both, state and federal law. Yet in blatant disregard of all of the above, DCF did not care—on November 1, 2021, DCF placed Plaintiff on unpaid leave and never allowed her to return all because Plaintiff is a disabled person and member of a protected class.

**DCF knew Plaintiff was likely to die if she complied with its policy demand; but DCF did not care.**

## PARTIES

1. Plaintiff Audrey McCarthy ("Plaintiff") is an adult resident of the Commonwealth of Massachusetts who suffers from a prolapsed Mitral valve with regurgitation ("disability") which is a disability within in the meaning of 42 U.S.C. § 12102(1). At all times relevant to this action, Plaintiff was employed as the Area Administrative Manager for DCF's Metro North Office. Plaintiff's primary duties and responsibilities included managing and overseeing budgets, paying vendors, monitoring childcare and camp contracts,

2.     Defendant Massachusetts Department of Children and Families ("DCF" or "Defendant") is an agency of the Commonwealth and is a person within the meaning of 42 U.S.C. § 2000e (a) and is an employer within the meaning of 42 U.S.C. § 2000e (b) and of M.G.L. 151B, § 1(5).

## JURISDICTION

3.     Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, both of which provide for original jurisdiction for Plaintiff's claims arising under the laws of the United States.

4.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought pursuant to the Massachusetts General Laws, in that Plaintiff's state law claim is so closely related to her federal claim that establishes this Court's original jurisdiction that the same case or controversy requirement prescribed by Article III of the United States Constitution is satisfied.

## VENUE

5.     Venue is proper pursuant to 28 U.S.C. §1391 in that Defendant is a resident of the Commonwealth of Massachusetts, and all events giving rise to this action occurred in this District unless otherwise stated.

6.     Venue is also proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) because the alleged unlawful employment practices were committed within this District, the employment records relevant to the alleged unlawful employment practices are maintained and administered in this District, and all parties reside within this District.

//

//

//

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.    On December 8, 2021, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").[1]

8.    On March 5, 2023, Plaintiff received her right-to-sue letter.[2]

9.    Plaintiff has exhausted her administrative remedies and satisfied all conditions precedent to maintaining this action, in that she filed a Charge of Discrimination within ninety (90) days of the last date on which DCF discriminated against her, Plaintiff received her right-to-sue letter after more than 180 days had passed since the date on which Plaintiff filed her EEOC Charge of Discrimination, and this action is commenced on or within ninety (90) days of receiving her right-to-sue letter.

## STATEMENT OF FACTS

10.    On or about August 19, 2021, Governor Charles D. Baker issued Executive Order 595 "E.O. 595"), which *inter alia* required all employees of the Commonwealth's Executive branch, including Plaintiff, to submit proof of full vaccination against COVID-19 by October 17, 2021, as a condition of continued employment.

11.    By way of E.O. 595, the Governor directed the Human Resources Division to issue a written policy with a procedure to allow "limited exemptions from the vaccination requirement where a reasonable accommodation can be reached for any employee who is unable to receive COVID-19 vaccination due to [a] medical disability." A true copy of E.O. 595 is attached hereto as Exhibit A.

---

[1] Plaintiff first experienced adverse employment action on November 1, 2021, when DCF suspended her and placed her on leave without pay ("LWOP").
[2] The date Plaintiff's right-to-sue letter was issued is unknown as it was not dated; however, Plaintiff did not receive her right-to-sue letter until March 5, 2023.

12.     The products known as "COVID-19 vaccines" produced by Johnson & Johnson, Moderna, and Pfizer do not prevent recipients from contracting and transmitting COVID-19.

13.     Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, has stated, "We know that people get infected and then get reinfected. And people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months."[3]

14.     Figures from the Massachusetts Department of Public Health (DPH) figures show that the majority of people hospitalized in Massachusetts for COVID-19 have been "fully vaccinated."

15.     According to the Massachusetts DPH, more than 3,000 "fully vaccinated" people in Massachusetts have died from COVID-19.

16.     The Massachusetts DPH categorizes individuals as "fully vaccinated" if they have received the number of doses required to complete the COVID-19 vaccine series for their age and all of these doses have been reported to the Massachusetts Immunization Information System.

17.     In mid-July the Massachusetts DPH stopped publishing the number of COVID-19 breakthrough cases.[4] Specifically, the DPH website states "data on vaccine breakthrough cases in Massachusetts are no longer being updated." To date, the DPH has not explained why, nor has DPH offered any reason for its sudden refusal to report such pertinent information.

18.     The final weekly report on COVID-19 cases among "fully vaccinated" individuals states that 11.4% of "fully vaccinated" people have caught COVID-19 after becoming "fully vaccinated":

---

[3] Matt Peterson, Fauci: Covid Will Keep Infecting People, *Even the Vaccinated*, BARRON'S (July 22, 2022), available at: https://www.barrons.com/articles/anthony-fauci-covid-19-biden-immunity-51658437525 (last accessed June 2, 2023).
[4] DPH defines "breakthrough cases" as "people who were injected with the products and then caught the disease."

    a.  As of July 2, 2022 there were 5,408,359 fully vaccinated people and there were 617,337 cases in vaccinated people

    b.  10,121 of those 617,337 cases resulted in hospitalization and 3,213 cases resulted in death based on information reported to date[5]

19.    Below the figures, the DPH includes this note about undercounting both of cases and hospitalizations:

> Identification of cases in vaccinated people relies on matching data between the system of record for cases and vaccinations. The number of cases in vaccinated people may be undercounted due to discrepancies in the names and dates of birth of individuals, resulting in an inability to match records across systems. Hospitalization data is likely also undercounted as identification and reporting of hospitalized cases relies on that information being obtainable by case investigators through patient interview.

20.    According to DPH, as of July 2022, more than 617,000 "fully vaccinated" persons contracted COVID-19, and that number excludes those who never reported that they contracted the virus to their medical provider.

21.    Upon information and belief, hundreds of thousands more "fully vaccinated" persons have contracted COVID-19 since July 2022.

22.    Plaintiff is a disabled person within the meaning intended under the ADA. Plaintiff suffers from a prolapsed Mitral valve with regurgitation ("disability").

23.    Plaintiff's disability is an extremely severe heart condition in which her blood flows backwards in the opposite direction the blood is supposed to travel, and due to the severe weakness of her prolapsed Mitral valve, the blood flow is not consistent; rather, it "leaks" back into the valve in what would be the correct direction of flow.

---

[5] *See* <u>Exhibit B</u>, Massachusetts Department of Public Health COVID-19 Vaccine Data –Tuesday, July 5, 2022.

24.     Due to the severity of her disability, Plaintiff's treating physician, a licensed medical doctor, determined to a reasonable degree of medical certainty that the risks posed by getting vaccinated against COVID-19 outweighed the benefits conferred through vaccination.

25.     Plaintiff's disability is also contra-indicated and if Plaintiff were to get any of the COVID-19 vaccines ever made available in the United States, there is a substantial likelihood that she would die.

26.     Due to her disability and in accordance with Executive Order 595, Plaintiff submitted to DCF a request for a medical accommodation concerning the vaccine mandate.

27.     Despite being fully aware that Plaintiff is unable to become vaccinated, DCF still took adverse employment action against Plaintiff.

## COUNT I
### DISABILITY DISCRIMINATION
### Violation of the ADA

28.     Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

29.      Plaintiff is a disabled person within the meaning of 42 U.S.C. § 12102(1).  Plaintiff suffers from a prolapsed Mitral valve with regurgitation, which is a physical impairment that substantially limits one or more of Plaintiff's major life activities, including without limitation, caring for herself, performing manual tasks, eating, sleeping, and breathing.  DCF also regarded Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A).

30.     Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8). Plaintiff, with or without a reasonable accommodation, can perform the essential functions of an Area Administrating  Investigator based factors including but not limited to, her education, experience, performance reviews, and October 2018 return-to-work letter.

31.     Plaintiff, at all times relevant to this action, was an employee within the meaning of 42 U.S.C. § 12111(4).

32.     DCF, at all times relevant to this action, was Plaintiff's employer within the meaning of 42 U.S.C. § 12111(5).

33.     DCF had actual knowledge or constructive knowledge of Plaintiff's disability at all times relevant to this action, in that DCF received Plaintiff's medical accommodation request; reviewed Plaintiff's medical accommodation request; discussed Plaintiff's disability; discussed Plaintiff's need for accommodations; examined, reviewed, or possessed medical evidence of Plaintiff's disability; and received Plaintiff's numerous requests for a disability accommodation.

34.     Executive Order 595 permits DCF to accommodate Plaintiff based on her disability.

35.     The ADA requires DCF to reasonably accommodate qualified persons with disabilities, such as Plaintiff, so long as doing so does not impose an undue hardship.

36.     DCF could have reasonably accommodated Plaintiff without suffering an undue hardship, in that vaccination is immaterial as to the prevention of contraction and transmission of COVID-19; thus, there can be no hardship whereas someone who is vaccinated is permitted to maintain their employment despite still being able to contract and transmit the virus.

37.     DCF is not subject to any violation of law had it accommodated Plaintiff and Executive Order 595 provides for the accommodating of those with disabilities rendering them unable to receive the COVID-19 vaccine.

38.     By allowing Plaintiff to employ other COVID-19 mitigation measures, including masking, social distancing, and routine testing, DCF could have accommodated Plaintiff and no undue hardship would have been endured.

39.     Along with her request for a disability accommodation, Plaintiff attached a medical record signed by her treating physician that advised DCF that Plaintiff was unable to receive the COVID-19 vaccine.

40.      Despite receiving Plaintiff's request for a disability accommodation and medical documentation evidencing that she was unable to receive the COVID-19 vaccine, DCF violated Plaintiff's right to work free of discrimination by placing her on LWOP, and thereafter, never allowing her to return (collectively or individually, "adverse employment action").

41.     DCF took the aforementioned adverse employment action against Plaintiff directly and proximately because Plaintiff is a disabled person and member of a protected class.

42.     All allegations set forth herein constitute a violate the ADA.

43.     As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in the amount of $300,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT II
### DISABILITY DISCRIMINATION
### Violation of the MCRA

44.     Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

45.      Plaintiff is a disabled person within the meaning of the MCRA.  Plaintiff suffers from a prolapsed Mitral valve with regurgitation, which is a physical impairment that substantially limits one or more of Plaintiff's major life activities, such as caring for herself, performing manual tasks, eating, sleeping, and breathing.  DCF also regarded Plaintiff as having such an impairment as defined by the MCRA.

46.     Plaintiff is a qualified individual within the meaning of the MCRA.  Plaintiff, with or without a reasonable accommodation, can perform the essential functions of Area Administrative Manager based factors including but not limited to, her education, her stellar performance reviews, and the thirty-three (33) years of experience she has as a DCF employee.

47.     Plaintiff, at all times relevant to this action, was an employee within the meaning of the MCRA.

48.     DCF, at all times relevant to this action, was Plaintiff's employer within the meaning of the MCRA.

49.     DCF had actual knowledge or constructive knowledge of Plaintiff's disability at all times relevant to this action, in that DCF received Plaintiff's medical accommodation request; reviewed Plaintiff's medical accommodation request; discussed Plaintiff's disability; discussed Plaintiff's need for accommodations; examined, reviewed, or possessed medical evidence of Plaintiff's disability; and received Plaintiff's numerous requests for a disability accommodation.

50.     Executive Order 595 permits DCF to accommodate Plaintiff based on her disability.

51.     Along with her request for a disability accommodation, Plaintiff attached a medical record signed by her treating physician that advised DCF that Plaintiff was unable to receive the COVID-19 vaccine.

52.      Despite receiving Plaintiff's request for a disability accommodation and medical documentation evidencing that she was unable to receive the COVID-19 vaccine, DCF violated Plaintiff's right to work free of discrimination by placing her on LWOP, and thereafter, never allowing her to return (collectively or individually, "adverse employment action").

53.     Plaintiff is a qualified individual with disability based upon her longstanding history and present ability to satisfy the general skill, experience, education and other job-related

requirements of an Area Administrative Manager, and Plaintiff can perform the essential functions of the job, with or without reasonable accommodation.

54.     At all times relevant, DCF had the ability to reasonably accommodate Plaintiff without suffering an undue hardship. Specifically, permitting Plaintiff to maintain her employment would not have imposed any cost on DCF, nor would permitting Plaintiff to continue working, with or without an accommodation, negatively impact DCF's operation and functioning. Despite this, even if a de minimis cost did exist, such expense is incredibly small and minor to DCF when comparing the manner in which DCF operates and the amount of funding DCF has for its operation.

55.     DCF took the aforementioned adverse employment action against Plaintiff directly and proximately because Plaintiff is a disabled person and member of a protected class.

56.     All allegations set forth herein, including those concerning DCF's refusal and failure to accommodate Plaintiff, constitute a violation of the MCRA.

57.     As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in the amount of $300,000.00, including the loss of wages, loss of income and benefits, endured humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Honorable Court:

    A.     Order Defendant to rehire and reinstate Plaintiff with no loss of seniority;

    B.     Award Plaintiff damages, plus her costs and her reasonable attorney's fees, and

    C.     Order such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 2, 2023

Respectfully submitted,

/s/ WILLIAM E. GENS
William E. Gens [BBO
556595] GENS & STANTON, P.C.
12 Ericsson Street
Boston, MA 02122
(617) 206-4675
billgens@genslawoffices.com