UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-11258-RGS

AUDREY McCARTHY

v.

MASSACHUSETTS DEPARTMENT OF CHILDREN
AND FAMILIES; STARVERNE MILLER, in her
official capacity as Acting Commissioner of the Department
of Children and Families; MASSACHUSETTS EXECUTIVE
OFFICE OF HEALTH AND HUMAN SERVICES; and
KATHLEEN E. WALSH, in her official capacity as
Secretary of Health and Human Services

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

April 23, 2025

STEARNS, D.J.

Plaintiff Audrey McCarthy is suing her former employer, the

Massachusetts Department of Children and Families (DCF), and several

related defendants,[1] accusing them of discriminating against her on the basis

of disability when they denied her request for a medical exemption from

---

[1] The other defendants are Starverne Miller, in her official capacity as
the Acting Commissioner of DCF; the Massachusetts Executive Office of
Health and Human Services (EOHHS), of which DCF is a part; and Kathleen
Walsh, in her official capacity as the Secretary of EOHHS.

DCF's COVID-19 vaccine mandate.[2] Defendants move for summary judgment on her claims.[3]  For the following reasons, the court will allow the motion.

## FACTUAL BACKGROUND

On August 19, 2021, Governor Baker issued Executive Order 595, which ordered all executive department employees to verify their vaccination status by October 17, 2021.   Exempt from the vaccine requirement were executive department employees who could not tolerate the vaccine because of a medical disability, or who refused to be vaccinated because of a sincerely held religious belief, provided that an accommodation was available that would not pose undue hardship on the agency.  Defendants, as a branch of the executive department, fell within the scope of Executive Order 595.

---

[2] The Amended Complaint asserts two different counts of disability discrimination: one under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; the other under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Because "[t]he same standards . . . apply to claims under the ADA and under the Rehabilitation Act," *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 11 n.1 (1st Cir. 2004), and because the parties themselves do not meaningfully distinguish between the two statutes, the court will treat the claims as one for the purposes of this motion.

[3] Defendants also move to strike certain portions of the materials submitted by McCarthy in opposition to their motion for summary judgment.  Although the court entertains doubts about the admissibility of the referenced materials, it finds the motions to strike moot for the simple reason that none of the information contained within these documents materially impacts the court's determination on the merits.

On September 2, 2021, McCarthy, an Area Administrative Manager for DCF's Metro North Area Office, applied for a medical exemption from the vaccine requirement in light of her mitral valve regurgitation.[4]  Defendants considered her request but, on October 26, 2021, denied it, stating that, although McCarthy had "successfully demonstrated a medical contraindication to the COVID-19 vaccine," granting her request would "pose[] an undue hardship for the agency." October 26, 2021 Letter [Dkt # 65-7].  Specifically, defendants noted that an exemption would eliminate "an essential function" of her job, "increase workplace safety risks," "negatively impact safety planning," "negatively impact operational factors such as staffing and workflow, and negatively impact direct care."  *Id.*

McCarthy refused to be vaccinated following the denial of her exemption request and, in November of 2021, retired from her position to avoid termination and loss of benefits.  Shortly thereafter, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).  The EEOC issued a right-to-sue letter on March 5, 2023, and

---

[4] Although McCarthy represents her diagnosis as mitral valve prolapse, her primary care physician, Dr. Berzansky, testified that at all times relevant to this case she instead had mild mitral valve regurgitation.  *See* Berzansky Dep. [Dkt # 46-11] at 19:10-20:11, 21:7-12.

3

McCarthy filed the instant litigation in federal district court three months later.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The court assesses the validity of McCarthy's claims using the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Flaherty v. Entergy Nuclear Operations, Inc.*, 946 F.3d 41, 53 (1st Cir. 2019). Under this paradigm, a plaintiff "has the initial burden of establishing a prima facie case by showing that [s]he (1) was disabled within the meaning of the ADA, (2) was a 'qualified individual,' and (3) was discharged in whole or in part because of h[er] disability." *Id.* at 53, quoting

4

*Phelps v. Optima Health, Inc.*, 251 F.3d 21, 24 (1st Cir. 2001).  If a plaintiff makes the requisite showing, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its action."  *Flaherty*, 946 F.3d at 53-54.  If the employer proffers a legitimate, nondiscriminatory reason for its action, the burden of production shifts back to the employee, requiring her to provide evidence "that the employer's proffered reason for the adverse employment action was pretextual and that the true reason was unlawful discrimination."  *Id.* at 54.

McCarthy falters at the first stage.  Even assuming she has met her burden of establishing that she is disabled within the meaning of the statute,[5] she has not shown that she is a qualified individual.  "[A] 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"  *Id.* at 53, quoting 42 U.S.C. § 12111(8).  Because the parties agree that a "person who poses a significant risk of communicating an infectious disease to others in the workplace" is

---

[5] The court is not convinced that she has.  The only limitations she identifies are, by her own account, traceable to her shortness of breath.  There is no *medical* evidence in the record, however, attributing her shortness of breath to her mitral valve regurgitation.  Indeed, her own primary care physician was unable to find any link between the two when he performed an echocardiogram in 2013.  *See* Berzansky Dep. [Dkt ## 46-11, 63] at 106:3-107:16.

not a qualified individual unless that risk can be eliminated with a reasonable accommodation, *see* Mem. [Dkt #45] at 7, quoting *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 288 (1987); Opp'n [Dkt # 53] at 14, the question is whether McCarthy has met her prima facie burden that the risk could have been eliminated or made negligible with her requested accommodation (masking and testing).[6]

On this record, the answer is no. While McCarthy suggests, based on the information available to her now, that she posed no more direct a threat than any vaccinated individual, "[t]he existence, or nonexistence, of a significant risk must be determined from the standpoint of the person who refuses the treatment or accommodation, and the risk assessment must be based on medical or other objective evidence." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). Here, at the time her exemption request was denied, the general medical consensus (based on objective data provided by public health authorities) was that vaccination was more effective in preventing transmission of the virus than masking and testing alone. *See Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 92 (1st Cir. 2025).

---

[6] The court rejects McCarthy's assertion that defendants waived this argument by allowing her to rely on masking and testing during the two-month period that her exemption request was pending. Defendants could hardly take any other course of action without improperly prejudging the merits of her request.

Even if masking and testing could, however, be said to sufficiently reduce the risk of transmission (in absolute terms) to obviate the concern for the health of others, the court is not convinced that McCarthy's proposed accommodation was a "reasonable" one under the circumstances. "An accommodation request . . . must explain how the accommodation is linked to plaintiff's disability." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012); *see also Hustvet v. Allina Health Sys.*, 910 F.3d 399, 411 (8th Cir. 2018) ("When the 'accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity that is limited, and the accommodation sought.'"), quoting *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003). Here, it is not clear how McCarthy's proposed accommodation – an exemption from the vaccine requirement – is linked to her alleged disability – mitral valve regurgitation – given the undisputed absence of any CDC-recognized medical contraindication to the vaccine. At best, McCarthy asserts that, because the vaccine may, in rare instances, cause cardiac complications, and because mitral valve regurgitation is a heart issue, she could not safely take the vaccine. The problem is this: McCarthy does not offer any evidence that individuals with mitral valve regurgitation have a higher risk of experiencing cardiac

complications from the vaccine than those without the condition (or that, if cardiac complications *do* arise, individuals with mitral valve regurgitation have a worse prognosis than those without the condition).[7]

### ORDER

For the forgoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>.  The Clerk shall enter judgment in defendants' favor on all counts.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[7] Dr. Berzansky indicated during his deposition that the risk of cardiac complications was not specific to McCarthy as an individual with mitral valve regurgitation.  *See* Berzansky Dep. at 52:10-53:7; *see also id.* at 45:18-46:13.